EMN:AH
F.#2010R02495

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**14 MISC 1183**

- - - - - - - - - - - - - - - - - - - X

IN RE APPLICATION OF
THE UNITED STATES OF AMERICA
FOR AN ORDER PURSUANT TO
18 U.S.C. § 2703(d)

SEALED APPLICATION

- - - - - - - - - - - - - - - - - - - X

Amanda Hector, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Eastern District of New York. I respectfully submit this *ex parte* application for an Order pursuant to Title 18, United States Code, Section 2703(d) to require Google, which functions as an electronic communications service provider and/or remote computing service, to provide records and other information pertaining to the following email account: jwebbfifa@gmail.com (the "SUBJECT ACCOUNT"). The records and other information requested are set forth as Attachments to the proposed Orders.

## LEGAL AND FACTUAL BACKGROUND

2. The United States government is investigating possible violations of federal criminal laws, including conspiracy to commit and substantive racketeering, money laundering and wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, 1956, and 1962, by current and former officials involved in international soccer governance and executives with affiliated sports marketing companies that buy and sell television and other rights associated with the game of soccer. The focus of the investigation is on corruption, including the payment of bribes and

kickbacks to the foregoing officials and related crimes, occurring in the Eastern District of New York and elsewhere.

3. The investigation to date provides reasonable grounds to believe that Google has records and other information pertaining to certain of its subscribers that are relevant and material to an ongoing criminal investigation. Because Google functions as an electronic communications service provider (by providing subscribers the ability to send or receive wire or electronic communications) and/or a remote computing service (by providing computer storage or processing services to the public by means of an electronic communications system), Title 18, United States Code, Section 2703 sets out particular requirements that the government must meet in order to obtain access to the records and other information it is seeking.

4. Here, the government seeks to obtain the following categories of information: (1) basic subscriber information; and (2) records and other information.

5. A subpoena allows the government to obtain subscriber name, address, length and type of service, connection and session records, telephone or instrument number including any temporarily assigned network address, and means and source of payment information. 18 U.S.C. § 2703(c)(2). The government may also compel such information through an order issued pursuant to Title 18, United States Code, Section 2703(d). *See* 18 U.S.C. §§ 2703(c)(1)(B), 2703(c)(2).

6. To obtain records and other information pertaining to subscribers of an electronic communications service provider or remote computing service, the government must comply with Title 18, United States Code, Section 2703(c)(1), which provides, in pertinent part:

> A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or

2

customer of such service (not including the contents of communications) only when the governmental entity– . . .

(B) obtains a court order for such disclosure under subsection (d) of this section.

7. Section 2703(d), in turn, provides in pertinent part:

A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction[1] and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. . . . A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

8. Accordingly, this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the materials sought are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

9. The evidence obtained during the investigation to date includes, among other things, information provided by a former sports marketing executive who currently serves

---

[1] 18 U.S.C. § 2711(3) states that "the term 'court of competent jurisdiction' includes-- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that-- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title; or (B) a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants."

3

as an official involved in international soccer governance ("Official 1"), records obtained pursuant to federal grand jury subpoenas, and other sources.[2]

10. FIFA is a registered legal entity known as an "association" under Swiss law. Headquartered in Zurich, it is presently comprised of more than 200 member associations, including the United States Soccer Federation ("USSF"), each of which represents and regulates organized soccer in a particular nation. Among other things, FIFA's objectives include organizing international competitions and creating and enforcing regulations that its member associations must follow. FIFA's member associations are also organized into six continental confederations ("Continental Confederations"), including the Confederation of North, Central American and Caribbean Association Football ("CONCACAF"), which is the continental confederation for North America, Central America and the Caribbean. In addition to providing representatives who help to govern FIFA, the Continental Confederations work closely with FIFA and one another to organize international soccer competitions and carry out FIFA directives on a regional basis. In addition to being part of FIFA and their respective continental confederations, some of the member associations are also members of smaller, regional federations ("Regional Federations"). For example, the Caribbean Football Union ("CFU") is a regional federation that represents the Caribbean members of CONCACAF and others.

11. The Continental Confederations and Regional Federations often enter into contracts with sports marketing companies to commercialize the media and marketing rights to various soccer events owned by the Continental Confederations and Regional Federations. These events can include qualifying games leading up to the World Cup ("World Cup Qualifier games"), the sport's premier quadrennial international tournament, as well as international

---

[2] Official 1 has been providing information to the government in hopes of being offered a cooperation agreement.

4

tournaments organized by the Continental Confederations. For example, among other tournaments, CONCACAF organizes the Gold Cup ("Gold Cup"), featuring the men's national teams from CONCACAF and, from time to time, other confederations.

12. The rights purchased by various sports marketing companies often include an array of media and marketing rights, such as television and radio broadcasting rights, advertising rights, sponsorship rights, licensing rights, hospitality rights and ticketing rights. Once purchased, the sports marketing companies typically sell these rights to, among others, television and radio stations, sponsors and sub-licensees, including those located in the United States.

13. Beginning in the 1990s and continuing through the summer of 2012, Official 1 was an executive of a privately-held sports marketing business that is headquartered in South America and has subsidiaries and affiliates in the United States, among other places (collectively, "Sports Marketing Company"). Sports Marketing Company's operations focused on, among other things, the commercialization of soccer through the purchase and sale of media and marketing rights associated with the sport. Sports Marketing Company was specifically involved in the purchase and sale of media and marketing rights associated with soccer in the region covered by CONCACAF. While she/he was an executive at Sports Marketing Company, Official 1 was responsible for, among other things, negotiating the purchase of television and other rights associated with various soccer tournaments owned by CONCACAF and CFU.

14. In approximately May 2012, Jeffrey Webb ("Webb") was elected President of CONCACAF. In approximately July 2012, Official 1 left Sports Marketing Company and became an official at CONCACAF, working under Webb.

5

15. Prior to leaving Sports Marketing Company and becoming an official at CONCACAF, Official 1 negotiated a contract concerning certain World Cup Qualifier games on behalf of Sports Marketing Company with Webb, who negotiated on behalf of CFU.[3] According to Official 1, during the negotiations, Official 1 met with a close associate of Webb's ("Associate 1"), who had engaged in various business ventures with Webb and had also previously served as a soccer official. Associate 1 informed Official 1 that a bribe payment would have to be paid to Webb in conjunction with the contract for the World Cup Qualifier games. Associate 1 later informed Official 1 that the bribe payment would be $3 million. Official 1 agreed to facilitate the payment, which was to be made through Associate 1 for the benefit of Webb. In order to facilitate the payment, Official 1 put Associate 1 in contact with a finance employee at Sports Marketing Company. Although the terms of the deal between Sports Marketing Company and CONCACAF for the World Cup Qualifier games were finalized before Official 1 left Sports Marketing Company, the contract was not signed until after Official 1 became an official at CONCACAF.

16. After leaving Sports Marketing Company and becoming an official at CONCACAF, Official 1 had at least one conversation with Webb regarding the $3 million bribe payment. During that conversation, Webb inquired whether the payment had been made yet. To Official 1's knowledge, at least half of the $3 million payment has been made.

17. While an official at CONCACAF, Official 1, now acting on behalf of Webb, negotiated additional contracts with Sports Marketing Company for various CONCACAF tournaments, including the 2013 Gold Cup. According to Official 1, during the negotiations related to the 2013 Gold Cup, Webb discussed with Official 1 his expectation for a personal

---

[3] Prior to being elected as President of CONCACAF in approximately May 2012, Webb was the President of the Cayman Islands Football Associates ("CIFA") and served on the Executive Committee of CFU.

6

bribe payment related to the contract, as well as various payment methods which could be used to facilitate the payment discretely. Further according to Official 1, Webb ultimately told Official 1 to submit a false invoice for $1.1 million to Sports Marketing Company to be paid to a third party company affiliated with another associate ("Associate 2") of Webb's. The purpose of using Associate 2, a third party company and a false invoice was to hide the fact that the $1.1 million payment was a payment to Webb. Official 1 facilitated the payment to the third party company. Official 1 is not aware how Associate 2 transferred the payment to Webb. According to Official 1, she/he used her/his own personal email account to communicate regarding the bribe payment as opposed to her/his official CONCACAF email account. Further according to Official 1, she/he may have communicated with Webb regarding the bribe payment using Webb's personal email address, the SUBJECT ACCOUNT.

18. While an official at CONCACAF, Official 1 also negotiated additional contracts with Sports Marketing Company that also included bribe payments to Webb, extending to tournaments through the year 2022. To Official 1's knowledge, while some of the bribe payments she/he negotiated on behalf of Webb have been paid, others remain outstanding. Moreover, according to Official 1's experience, it was not unusual to discuss a bribe amount during a negotiation, but to leave discussions regarding the mechanics of making the bribe payment until a later date.

19. As indicated above, according to Official 1, Webb used various methods to facilitate his receipt of personal bribe payments related to contracts entered into between CONCACAF and Sports Marketing Company and CFU and Sports Marketing Company. These methods, including the use of Associate 1 and Associate 2 as intermediaries, as well as at least one third-party company, were designed to disguise the nature and purpose of the payment.

7

While Official 1 was privy to certain discussions regarding the facilitation of the bribe payments, she/he was not privy to others, including discussions concerning the method used to transfer the bribe payments from Associate 1 and Associate 2 to Webb. Also according to Official 1, efforts were made to avoid the use of official email accounts when discussing the provision of such payments and Official 1 believes that she/he may have communicated with Webb regarding at least one bribe payment using Webb's personal email address, the SUBJECT ACCOUNT. There are thus reasonable grounds to believe that the information sought through this application, including but not limited to source and destination email addresses, IP addresses and other non-content header information associated with the SUBJECT ACCOUNT will provide the government with relevant and material information regarding further communications between Official 1 and Webb, as well as between Webb and others used to facilitate the bribe payments, such as Associate 1 and Associate 2.

20. Records of customer and subscriber information relating to this investigation that are available from Google and that may be found at Google will help government investigators to identify additional individuals who are involved in the activities described above and to determine the nature and scope of those activities. Accordingly, the conduct described above provides specific and articulable facts showing that there are reasonable grounds to believe that the materials sought are relevant and material to an ongoing criminal investigation.

21. The government requests that Google be directed to produce all records described in Attachment A to the proposed Order. Part 1 of Attachment A requests the account name, address, telephone number, email address, billing information, and other identifying information for the SUBJECT ACCOUNT.

22. Part 2 of Attachment A requests the production of the SUBJECT ACCOUNT'S records and other information through the date of the Court's Order. As identified in more detail in Part 2 of Attachment A, this information includes connection information, telephone records and non-content information associated with the contents of any communication or file stored by or for the accounts.

23. The information requested should be readily accessible to Google by computer search, and its production should not prove to be burdensome.

24. The United States requests that this application and Order be sealed by the Court until such time as the Court directs otherwise.

25. The United States requests that, pursuant to the preclusion of notice provisions of Title 18, United States Code, Section 2705(b), Google be ordered not to notify any person (including the subscriber or customer to which the materials relate) of the existence of this Order unless and until such time as they are authorized to do so by the Court. The United States submits that such an order is justified because notification of the existence of this Order would seriously jeopardize the ongoing investigation. Specifically, such a disclosure would give the subscriber an opportunity to destroy evidence, change patterns of behavior, notify confederates, or otherwise attempt to avoid prosecution. At this time, there is no reason to believe that the target is aware of the full scope and focus of the pending investigation.

WHEREFORE, it is respectfully requested that the Court grant the attached Order: (1) directing Google to provide the United States with the records and information described in Attachment A; (2) directing that three certified copies of this application and Order be provided by the Clerk of this Court to the United States Attorney's Office; and (3) directing that Google not disclose the existence of the application or Order, or the underlying investigation.

Dated: Brooklyn, New York
      September 24, 2014

Amanda Hector
Assistant United States Attorney
718-254-6212

F.#2010R02495

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - X

IN RE APPLICATION OF
THE UNITED STATES OF AMERICA
FOR AN ORDER PURSUANT TO
18 U.S.C. § 2703(d)

SEALED ORDER OF
AUTHORIZATION

14 MISC 1183

- - - - - - - - - - - - - - - - - - - - - - X

This matter having come before the Court pursuant to an application under Title 18, United States Code, Section 2703, which application requests the issuance of an order under Title 18, United States Code, Section 2703(d) directing Google, an electronic communications service provider and/or a remote computing service, to disclose certain records and other information, as set forth in Attachment A to this Order, the Court finds that the applicant has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation.

IT APPEARING that the information sought is relevant and material to an ongoing criminal investigation into possible violations of federal criminal laws, including conspiracy to commit and substantive racketeering, money laundering and wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, 1956, and 1962, and that notification of the existence of this Order or the underlying application would seriously jeopardize the ongoing investigation;

IT IS ORDERED pursuant to Title 18, United States Code, Section 2703(d) that Google will, within three days of the date of this Order, turn over to the United States the records and other information as set forth in Attachment A to this Order.

F.#2010R02495

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

14 MISC 1183

- - - - - - - - - - - - - - - - - - - -X

IN RE APPLICATION OF
THE UNITED STATES OF AMERICA
FOR AN ORDER PURSUANT TO
18 U.S.C. § 2703(d)

SEALED ORDER
TO SERVICE PROVIDER

- - - - - - - - - - - - - - - - - - - -X

This matter having come before the Court pursuant to an application under Title 18, United States Code, Section 2703, which application requests the issuance of an order under Title 18, United States Code, Section 2703(d) directed Google, an Internet Service Provider located in Mountain View, California, an electronic communications service provider and/or a remote computing service, to disclose certain records and other information, as set forth in Attachment A to this Order, the Court finds that the applicant has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation.

IT APPEARING that the information sought is relevant and material to an ongoing criminal investigation, and that notification of the existence of this Order or the underlying application would seriously jeopardize the ongoing investigation;

IT IS ORDERED pursuant to Title 18, United States Code, Section 2703(d) that Google will, within three days of the date of this Order, turn over to the United States the records and other information as set forth in Attachment A to this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, and that Google shall not disclose the existence of the application or this Order of the Court, or the existence of the investigation, to the listed subscriber or customer or any other person, unless and until authorized to do so by the Court.

Dated: Brooklyn, New York
September 2\_, 2014

_____
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

2

## ATTACHMENT A

You are to provide the following information in electronic format:

1. The following customer or subscriber account information for each account registered to or associated with jwebbfifa@gmail.com (the "Account") for the period January 1, 2012 to the present:

   a. name(s) and email address;

   b. address(es);

   c. local and long distance telephone connection records, or records of session times and durations;

   d. length of service (including start date) and types of service utilized;

   e. telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

   f. the means and source of payment for such service (including any credit card or bank account number).

2. User connection logs for the Account(s) and time period in Part 1, including:

   a. records of user activity for any connections made to or from the Account, including the date, time, length, and method of connections, data transfer volume, user name, and source and destination Internet Protocol address(es);

   b. telephone records, including local and long distance telephone connection records, caller identification records, cellular site and sector information, GPS data, and cellular network identifying information (such as the IMSI, MSISDN, IMEI, MEID, or ESN); and

   c. non-content information associated with the contents of any communication or file stored by or for the Account(s), such as the source and destination email addresses, IP addresses and other non-content header information.